This is a suit for workmen's compensation, wherein plaintiff claims to have been injured on or about December 5, 1940, while in the scope and course of his employment by W. Horace Williams Company, Inc., as a laborer. He alleges that on the aforesaid date he and three other employees were moving a creosoted piece of timber weighing about a ton, by means of tongs, and that when one of said fellow employees dropped his side of the timber, the full weight thereof fell on plaintiff and pulled him down and wrenched and injured his back. He avers that he does not know exactly what the injuries to his back are, but that some, or all of the muscles, nerves, tendons, ligaments and tissues in his back were damaged and that an arthritis of the lumbar spine, which had not bothered plaintiff before the accident, was aggravated and that plaintiff was rendered totally and permanently disabled from performing work of any reasonable character. Because of such injury he claims of his employer and his employer's insurer workmen's compensation at the rate of $14.56 per week, being 65% of his weekly wage, commencing December 12, 1940, plus $250 for medical expenses, less a credit for such compensation as he has heretofore received, and less such medical expense as has heretofore been paid in his behalf. He states in his petition that the insurer has paid him 8 months' compensation, that is, up to about August 21, 1941, and that the insurer has also paid some medical expense, the amount of which he does not know.
The defendants admit plaintiff's employment and the accident as alleged, but deny that he had been disabled since the last compensation payment, and set forth that 65% of his weekly wage was $11.84 instead of $14.56 as set forth by him, and further aver that he was paid compensation in the amount of $11.84 from December 5, 1940, to August 21, 1941, and also that he was furnished all necessary medical attention at a cost to them of $99, and they deny any further liability.
After hearing of the case the District Court rendered judgment in favor of the defendants and dismissed plaintiff's suit. Plaintiff has appealed.
The case presents purely a question of fact, and while the District Judge did not submit written reasons for his judgment, it is apparent that he must have concluded that plaintiff had failed to establish his alleged disability, and it is incumbent upon us to determine whether or not he committed any manifest error in his finding of fact.
As stated hereinabove, the employment and the accident are admitted, and the only two questions at issue in the case are whether or not plaintiff's disability has existed beyond August 21, 1941, the date of *Page 521 
the last compensation payment, and whether or not $11.84 is the proper amount of compensation.
As far as the amount of compensation is concerned, the plaintiff has failed to introduce any evidence to show his weekly wage, and it seems therefore to be conceded that the amount heretofore paid him is the correct amount of compensation. Our consideration, therefore, may be centered only on the question of disability or lack of disability, and in that regard we have the testimony offered by plaintiff of Drs. Godfrey, Darby, Williams and himself, and by the defendants of Drs. McHugh, Caldwell, McKowen and Echols.
The plaintiff testifies that he has never done anything but heavy manual work and that he is not qualified to do any kind of work except hard labor and that he is unable to work now because of his injury. His testimony with reference to the injury is to the effect that since the accident he has had pain in the middle of his back and up to almost the shoulder blade and down to his hips. On cross-examination he admits that he has gained approximately 25 pounds since his injury, due to medicine, etc., given him.
Dr. Godfrey testified that he performed an examination of plaintiff, including the examination of X-ray pictures, on October 16, 1941, and from such examination he concluded that plaintiff had had a mild back strain, which had very likely healed completely, but there was a strong possibility that he was left with a neurotic condition, a fear of his back. His conclusion appears to be based on the fact that plaintiff complained of pain far too great in view of the lack of objective symptoms. He states that he has seen people in accidents with their vertebral columns severely broken and that they did not have as much pain as this man was complaining of, and that a low back strain, or any back strain, or an arthritic condition, or a combination of the two, in his opinion, would not cause anybody to suffer the way plaintiff claims to be suffering, and that because of these facts he was forced to conclude that at one time plaintiff had a painful back that had left him with a fear of his back. He further states that the possibility that plaintiff was malingering occurred to him, but that he dismissed this possibility in favor of an actual neurotic condition, because while he has seen a lot of people malingering about their backs, "they did not malinger quite that badly. This man would not let you do anything. The minute you would touch your finger tips to his skin, he would start jumping away and fuss and try to stop you from examining him."
Dr. Darby testified from an examination of plaintiff that he concluded that plaintiff had in all probability some injury to the back in view of X-ray findings solely. He stated that his examination of plaintiff was unsatisfactory because plaintiff complained of pain even to the slightest touch. He does not attempt to qualify as an X-ray expert, but states that in the course of his practice he has examined X-ray plates and that in this case, plates taken in December, 1940, and on September 4, 1941, show an arthritic condition with more arthritis apparently shown on the second plates.
Dr. Williams qualified as an expert radiologist, and testified that from examination of radiographs made by him on September 4, 1941, of plaintiff's back, he concluded that there is a hypertrophic arthritis, with lipping of the third, fourth and fifth lumbar vertebrae; that these radiographs are negative for fractures or dislocations. He also examined the December, 1940, X-rays and compared them with his X-rays of September 4, 1941, and concluded that there was an increase in the hypertrophic arthritic condition as shown by the earlier and later X-rays.
Dr. McHugh, testifying for defendant, stated that he examined plaintiff on October 14, 1941, and in effect found no objective symptoms of injury to his back, but that plaintiff "complained of tenderness over the back from about the 7th dorsal vertebra down to the sacrum * * *, complained of tenderness in each flank; will not do forward, backward or lateral bending, as he states it causes pain; will not permit flexion of the thighs on the abdomen, when lying down, but does straight leg raising without complaining." He also states that the X-ray examination of the spine is negative, except for hypertrophic arthritis, which he does not connect with the alleged injury. He states further that plaintiff's complaint of pain cannot be disproved, but that he is quite certain that he is exaggerating any existing disability; that he would not bend his spine forward, backward or laterally, and that in this respect he appeared over cautious; that he cannot disprove pain, but that he is certain plaintiff's back is capable of motion; that he did not permit flexion of the thighs *Page 522 
on the abdomen, yet he did straight leg raising without complaining, which the doctor considers inconsistent. The doctor refused to make a comparison of the plates made in 1940 with those made in September, 1941, for the reason that the films were taken in a different manner and were entirely different. He testified further that hypertrophic arthritis is not caused by one strain, but by many small strains over a long period of time, and this seems to be his principal reason for refusing to connect plaintiff's present hypertrophic arthritis with the injury. He admits that one sudden strain might aggravate an hypertrophic arthritis, but that such effect would only be temporary.
The testimony of Dr. Guy A. Caldwell, offered by defendant, may be summed up by his conclusion of his examination of plaintiff expressed as follows: "After reviewing the history, seeing the X-rays, and attempting a very unsatisfactory examination, the only conclusion I could possibly reach was that the patient was deliberately exaggerating his symptoms and doing all he could to avoid a thorough examination. I know of no name to apply to this attitude other than malingering." Dr. Caldwell testifies that from the examination of the X-rays, he failed to find any evidence of injury or disease to the back other than moderate hypertrophic changes. He admits that a severe blow on the back might aggravate hypertrophic arthritis of the back, but like Dr. McHugh, contends that such aggravation would be temporary only, and it is his opinion that the hypertrophic arthritis in the X-rays has no connection with plaintiff's accident. Upon being questioned by plaintiff's counsel, as to whether or not it is possible that plaintiff is suffering from neurosis, Dr. Caldwell stated that one of the principal reasons why he feels that plaintiff is deliberately misrepresenting his condition rather than being self-deluded is that the neurotic individuals, as a rule, like to have examinations, and that they assist in the examination to the utmost degree, because they themselves believe so sincerely that they are injured and that there is cause for their complaints, and they are trying to prove it to the examiner in every way possible, whereas plaintiff had the attitude of opposing the examination and was on the defensive about the whole thing.
Dr. Echols, a specialist in neurology, testified that neurological examinations consisting of an examination of the twelve pair of cranial nerves, an inspection of the occular fundi, an examination of all reflexes in the extremities and of the muscle power and sensory nerves of the trunk and extremities, and other details, such as a rough estimate of mentality, posture, gait, etc., failed to reveal any abnormality. He states that he found nothing to make him think that plaintiff had a neurosis, and that he did make a positive diagnosis of malingering, although he admits that he does not consider himself qualified to say whether or not plaintiff has a neurosis, since he is not a psychiatrist.
Dr. McKowen, also introduced by defendant, stated that he examined plaintiff on December 5, 1940, and on August 16, 1941, and he too testifies as to the absence of any objective symptoms, except hypertrophic arthritis in the lumbar vertebrae, and also as to plaintiff's lack of co-operation in being examined. He also concluded that plaintiff is a malingerer because of his lack of co-operation. He testifies to one impressive fact, which is also testified to by some of the other doctors, and that is that while plaintiff would always complain bitterly of even the slightest touch to his back, at times would knock his hand away when he attempted to touch his back, yet when he would say "he was going to strap his back, you could mash on his back as hard as you wanted, and he would not flinch".
From a review of the foregoing evidence, there appear to be only two theories on which we could find disability on the part of the plaintiff. The first of these would be that he is now suffering from a condition of hypertrophic arthritis, which was aggravated by the accident; and the second is that he is suffering from a neurosis as a result of having sustained a painful injury to his back; or else a combination of the two theories. It seems clear to us that the preponderance of the evidence is to the effect that while plaintiff does have a condition of hypertrophic arthritis, such condition is not due to the accident. The preponderance of the medical evidence is also to the effect that plaintiff is not suffering from any neurosis, but is malingering, particularly as shown by the testimony of Dr. Caldwell. In any event, we can find no manifest error in the trial court's apparent finding of fact to the effect that plaintiff has had no disability, resulting from the accident, since the date of the last compensation payment. Therefore the judgment of the lower court is affirmed. *Page 523